UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Shawn Michael-Glen Hendrix,

      Plaintiff,

v.

Toriano Hudson, et al.,

      Defendants.

Case No. 20-13200
Honorable Jonathan J.C. Grey

_____/

**ORDER ON TORIANO HUDSON'S MOTION TO DISMISS (ECF No. 40) AND BEVERLY WALTON'S MOTION TO DISMISS (ECF No. 41)**

    Shawn Michael-Glen Hendrix, an incarcerated person, brings this complaint pro se under 42 U.S.C. § 1983 against Toriano Hudson and Beverly Walton in their individual and official capacities.[1] (ECF No. 1.) Hendrix alleges violations of his Eighth Amendment Constitutional rights and violations of Michigan Department of Corrections (MDOC) policy and requests damages and fees. (ECF No. 1.) On October 10, 2022, Hudson filed a motion to dismiss or, in the alternative, motion for summary judgment. (ECF No. 40.) On October 14, 2022, Walton filed a motion

---

[1] In his complaint, Hendrix also named "Hutchenson", "Watson", "Holcomb", "Steece", "P. Warren", and "Richard D. Russel" as defendants. Holcomb, Steece, Warren, and Russell were summarily dismissed on January 20, 2021. (ECF No. 5.) Hudson and Walton filed answers stating that they were both misidentified in the complaint so "Hutchenson" and "Watson" were replaced in the caption with their correct names. (ECF No. 20.)

to dismiss or, in the alternative, motion for summary judgment. (ECF No. 41.) The deadlines for Hendrix's responses to these motions were October 31 and November 4, 2022. E.D. Mich. LR 7.1(e)(2)(A). Hendrix has not responded to the dispositive motions.

For the following reasons, Hudson's and Walton's motions to dismiss are **GRANTED** and Hendrix's Eighth Amendment claim is **DISMISSED WITHOUT PREJUDICE** and the MDOC policy claims are **DISMISSED WITH PREJUDICE** for failure to state a claim and for lack of subject matter jurisdiction.[2]

I.  **Background**

Hendrix filed his complaint on November 23, 2020. (ECF No. 1.) His complaint lays out the allegations that follow. Hendrix was incarcerated and under the care of MDOC and its officers. (*Id.*, PageID.9.) MDOC officers Hudson and Walton transported Hendrix and other prisoners from Duane L. Waters Hospital to Macomb Correctional Facility in a prison transport van. (*Id.*) Before departure, the officers restrained Hendrix with shackles but did not fasten his seatbelt. (*Id.*)

---

[2] Oral arguments would not aid in the disposition of this motion. Thus, the Court is ruling on the briefs alone. *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on the briefs without oral hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan LR 7.1(f)(2) gives discretion to decide motions without hearings).

Hendrix saw that Hudson talked on a cell phone while Hudson drove. (*Id.*) He also saw Walton show Hudson the contents of her cell phone while Hudson drove in "stop and go" traffic. (*Id.*) While Hudson stared at Walton's phone, he hit a stopped vehicle. (*Id.*) Hudson drove at "about" 35 miles per hour at the time of the crash. (*Id.*) As a result of the crash, Hendrix suffered injuries to his knee, head, and neck. (*Id.*) Hendrix alleges that Hudson and Walton violated his Eighth Amendment rights and MDOC policy by injuring him during the crash. (*Id.*, PageID.7.)

Hudson filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, as a sanction for various discovery violations or for failure to prosecute. (ECF No. 40.) Walton filed a motion to dismiss for failure to state a claim. (ECF No. 41.)

## II. Legal Standard

### A. State Sovereign Immunity

The two officer defendants, in their official capacities, are shielded by state sovereign immunity from suits brought by private individuals. A private individual may not sue a state unless the state consents to be sued. This is the principle of state sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 755 (1999). A judgment for money damages against a state official in their official capacity would be paid with public funds from the state treasury. Therefore, a suit for money damages

against a state official in their official capacity is a suit against the state that is barred by state sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). MDOC is an "arm of the State of Michigan" so it and its officers, acting in their official capacity, are protected by sovereign immunity. *McCoy v. Michigan*, 369 Fed. Appx. 646, 653–54 (6th Cir. 2010) (citations omitted). Therefore, Hendrix's case against Hudson and Walton in their official capacities is **DISMISSED WITH PREJUDICE**.

### A. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of a claim showing that the pleader is entitled to a judgment granting relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must illustrate the grounds of their entitlement to relief with "more than labels and conclusions." *Id.* at 555 (citations omitted). Plain statements of the requirements for a legal claim will not be enough. *Id.* at 555 (citations omitted). In other words, the complaint must contain sufficient factual allegations to create a plausible legal claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is plausible when the plaintiff states facts that allow a court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* (citations omitted). Courts hold complaints written by pro

se plaintiffs to a less stringent standard than ones drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even for pro se plaintiffs, "more than bare assertions of legal conclusions" is required. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the plaintiff's allegations in the complaint as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

**B. Eighth Amendment**

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of incarcerated persons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Prison officials acting with deliberate indifference towards an inmate to a substantial risk of serious harm violate the Eighth Amendment. *Id.* at 828. A prison official's actions must meet two requirements to establish a violation. *Id.* at 834. First, the alleged conduct or conditions must be sufficiently serious. *Id.* This is an objective component, meaning that a reasonable person would view the conduct as sufficiently serious. *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). To establish this objective component, the incarcerated person must show that the conduct or conditions pose an excessive and substantial risk of serious harm. *Wilson v. Williams*, 961 F.3d

5

829, 849 (6th Cir. 2020). Second, the official must have acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. This is a subjective component, meaning that the official must have known that their actions posed a substantial and excessive risk of serious harm and disregarded that risk anyway. *Id.* at 837. Mere negligence is not enough to establish a violation. *See Rhodes v. Michigan*, 10 F.4th 665, 678 (6th Cir. 2021).

**III. Analysis**

    **A. Eighth Amendment**

Hendrix has failed to establish that an Eighth Amendment violation occurred. The Sixth Circuit has determined that prison officials transporting prisoners can violate the Eighth Amendment for driving in a dangerous manner. *See Scott v. Becher*, 736 Fed. Appx. 130, 133 (6th Cir. 2018) (citing *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008)). In *Becher*, the defendant officer was alleged to have driven recklessly, above the speed limit, while swerving, and while the prisoner passengers begged him to slow down. *Id.* The officer instead laughed at their pleas, accelerated, and hit a bump in the road, which sent the prisoners flying. *Id.* The court found that conduct, if true, amounted to an Eighth Amendment violation. *See id.* at 133–34. However, Hendrix's case is distinguished from *Becher*.

Another prison passenger in the same van as Hendrix filed a complaint in this district against Hudson for a violation of the prisoner's Eighth Amendment rights for the exact same conduct alleged here. *See Hoosier-Bey v. Hudson*, No. 21-10189, 2021 WL 1175283, at *1–*3 (E.D. Mich. Mar. 29, 2021). Relying on the *Becher* analysis, the court dismissed the prisoner's claim. *Id.* The court found that Hudson's use of a cell phone while driving did not create an excessive risk of serious harm. *Id.* at *2. The court found that the minimal consequences for violating a state law prohibiting the use of a phone while driving evidenced that the conduct did not amount to a substantial risk of serious harm. *Id.* Further, the court found that Hudson lacked the required state of mind for deliberate indifference. *Id.* at *3. None of the passengers were alleged to have protested to Hudson using the phone while driving. *Id.* And there were no allegations that Hudson knew his conduct might result in an accident or injuries. *Id.* The court found that due to the lack of passenger protest and Hudson's apparent lack of awareness of the danger, the plaintiff had failed to state a claim. *Hoosier-Bey*, 2021 WL 1175283, at *3. The Court finds that case persuasive.

In another prisoner transportation case in this district, *Young v. Dept. of Corr.*, officers failed to fasten the prisoner's seatbelt and sped and swerved through traffic. No. 04-10309, 2007 WL 2214520, *6 (E.D. Mich. July 27, 2007). The

court determined that an excessive risk necessary to establish an Eighth Amendment violation had not occurred. *Id.* at *6.

The circumstances of Hendrix's case are distinguishable from those of *Becher* and *Young*. However, the Court notes that using a cell phone while driving can pose a risk of harm to passengers. In 2019,[3] 422 people were killed and 19,660 people were injured by drivers using cell phones. Nat'l Highway Safety Admin., *Distracted Driving 2019*, No. DOT HS 813111, available at https://crashstats.nhtsa.dot.gov/#!/PublicationList/41. This danger is heightened when passengers are not wearing seatbelts. In 2019, around 1,300 more people were killed without seatbelts than with seatbelts, and around 1.95 million more people were injured without seatbelts than with seatbelts. Nat'l Highway Safety Admin., *Traffic Safety Facts Annual Report Tables*, tbl. 85 (2019), available at https://cdan.nhtsa.gov/tsftables/tsfar.htm#. However, the crash here occurred only at or around 35 mph. The undersigned notes that there were 7,000 crashes between two vehicles resulting in fatalities and almost one million resulting in injuries at speeds between 30 and 40 mph. *Id.*, tbl. 33 (2019). These low-speed crashes accounted for around 23% and 40%[4] of total crashes involving fatalities and

---

[3] The Court will use 2019 data instead of the available 2020 data because the COVID-19 pandemic might have significantly altered the 2020 data.
[4] This is a large fraction of the total injuries. However, the injury numbers are less useful for determining the level of risk associated with driving at low speeds than the fatalities number

injuries, respectively. *Id.* But, crashes involving stopped cars are especially unlikely to cause fatalities or injuries, making up only 1.3% and 3.8%, respectively. *Id.*, tbl. 29 (2019). A rear-end crash with a stopped vehicle by another vehicle traveling at around 35 mph is much less likely to pose an excessive risk of serious harm to an inmate than one at a faster speed under more dangerous conditions. *See id.*

Given the above, and assuming the facts in the complaint are true, the actions taken by Hudson and Walton did pose a risk of harm to Hendrix. But these actions *did not pose an excessive and substantial risk of serious harm* to Hendrix given both the low speed of the collision with a stopped vehicle and the "stop and go" nature of the traffic conditions. This is especially so when compared with the actions taken by the defendant officers in *Becher*, 736 Fed. Appx. at 133, and *Young*, 2007 WL 2214520, at *6. Driving recklessly over the speed limit while swerving in traffic presents a much greater risk of serious harm to prisoner passengers being transported than using a cell phone during stop and go traffic while travelling at 35 mph. The risks associated with the behavior here are much

---

because the injury data is not disaggregated by severity. Thus, the Court cannot determine if any of those injuries were seriously harmful given the aggregated data.

To clarify, the standard for an Eighth Amendment violation does not require a substantial risk of death; rather, it requires a substantial risk of serious harm. *See, e.g., Becher*, 736 Fed. Appx. at 133 (finding an Eighth Amendment violation can occur for conduct that could result in non-life-threatening injuries).

less substantial than the risks of the conduct in *Becher* and in *Young*. While those two decisions came to opposite conclusions as to whether the similar conduct was sufficiently risky, they both help to clarify the standard for the kind of dangerous driving that amounts to an Eighth Amendment violation. Here, the conduct has failed to meet that standard and did not create an excessive risk of serious harm. *See Becher*, 736 Fed. Appx. at 133; *Young*, 2007 WL 2214520, at *6.

Even if Hendrix had established an excessive and substantial risk of serious harm, his claim would still fail at the second prong. Here, there is no showing that Hudson and Walton acted with a subjective deliberate indifference. Driving while talking on a cell phone or while looking at a phone might amount to negligence as those actions are highly distracting during an activity that requires a level of concentration. *See Larivee v. Schafer*, No. 1811260023, 2017 WL 10574825 (Mich. Cir. Ct. Sept. 13, 2017) (jury verdict finding the defendant negligent for using a cell phone while rear-ending the plaintiff's vehicle). The Court also notes the importance of attentive driving when transporting people. But more than negligence is required for an Eighth Amendment claim. *Rhodes*, 10 F.4th 665 at 678. Hudson's conduct falls short of a reckless disregard for a substantial risk of serious harm. Based on the allegations in the complaint, Hudson was, at most, negligent by using his cell phones and staring at Walton's cell phone while driving.

10

Further, the Court agrees with the similar findings in *Hoosier-Bey* regarding the same circumstances as this case. *See* 2021 WL 1175283, at *2–*3.

Further, Hudson's indifference to the risks lacks similarity to the defendant officer's indifference in *Becher*. Hudson was not alerted to the danger by any of the passengers, did not laugh at any passenger's pleas for help, and did not intentionally step on the gas despite known danger. *See Becher*, 736 Fed. Appx. at 133. Walton's actions are even less culpable than Hudson's. She occasionally showed Hudson her phone while he drove and she failed to fasten Hendrix's seatbelt. She did not drive the vehicle and is less responsible for the crash than Hudson. *See Young*, 2007 WL 2214520, at *6 (holding that mere failure to fasten a prisoner's seatbelt is not enough to establish an Eighth Amendment violation).

### B. MDOC Policy Violation Claims

Federal courts have an obligation to determine if they have subject matter jurisdiction before proceeding to the merits of a claim. *Lance v. Coffman*, 594 U.S. 437, 439 (2007) (citations omitted). Subject matter jurisdiction means that the court has the power to rule on a case. Federal courts are courts of limited powers meaning they can only hear cases (1) that are within the courts' powers as granted by the United States Constitution and (2) that Congress has allowed the courts to hear. 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3521 (3d ed. 2022).

A weak claim does not remove the court's power to hear a case unless the claim is clearly immaterial, insubstantial, or frivolous. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Here, Hendrix relies on § 1983, a federal law, to establish federal question jurisdiction. (ECF No. 1.) To maintain a § 1983 claim, the plaintiff must show a violation of a federal right created by a federal statute or established by the United States Constitution. *Golden State Trans. Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (citations omitted). The Court finds that Hendrix's MDOC policy violation claims are too insubstantial and immaterial to establish the Court's jurisdiction.

MDOC policy violations generally cannot establish a § 1983 violation because any rights granted by those policies are usually not created by federal statute or by the United States Constitution. Rather, rights that might be created by those policies are usually created by Michigan law. *But see* MDOC Policy Directive 03.02.130, D (requiring certain grievances to be handled according to federal statutory requirements), https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives. MDOC policy violation claims are generally immaterial and insubstantial for the purposes of establishing federal question jurisdiction. Without a material § 1983 claim based on a violation of a federal right; the Court does not have jurisdiction to hear Hendrix's MDOC policy violation claims. Hendrix has failed to show that any of the policies he cited are

established rights by federal law. After independently reviewing the policies Hendrix cited, the Court finds that, facially, none are established by federal law. *See* MDOC PD 03.03.130, B and K[5] (2022). Hendrix has also failed to establish the Court's jurisdiction to hear these claims in some other way.

Even if Hendrix could establish jurisdiction under § 1983 for MDOC policy violation claims, he has failed to establish a claim entitling him to relief. Hendrix has not cited to, and the Court has not found, any law showing that relief can be granted by the Court to a prisoner for a violation of these MDOC policies under state or federal law. Therefore, Hendrix's MDOC policy claims are **DISMISSED WITH PREJUDICE** for failure to state a claim and for lack of subject matter jurisdiction.

## IV. Conclusion

For the preceding reasons, the Court **GRANTS** Hudson's and Walton's motions to dismiss. Hendrix's Eighth Amendment claims are **DISMISSED WITHOUT PREJUDICE** and his MDOC policy claims are **DISMISSED WITH PREJUDICE** for failure to state a claim and for lack of subject matter jurisdiction.

---

[5] The policies Hendrix cites are intended to create humane treatment and living conditions for prisoners in MDOC care. *See* MDOC PD 03.03.130. These policies might possibly be established by the United States Constitution or by the Michigan Constitution. *See* U.S. Const. amend. VIII (prohibiting cruel *and* unusual punishment); Mich. Const. art. I, § 16 (1963) (prohibiting cruel *or* unusual punishment). To the extent that these policies are adopted pursuant to the United States Constitution, the above analysis on the Eighth Amendment claims fully encapsulates this issue.

**SO ORDERED.**

Dated: April 21, 2023              s/**Jonathan J.C. Grey**
                                   Jonathan J.C. Grey
                                   United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 21, 2023.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager
